UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| WILLIE BREZIAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. _____ |
| | ) |
| ARCSTREAM, INC. and | ) |
| KEVIN GAULT, an individual, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

COMES NOW the Plaintiff Willie Brezial ("Brezial" or "Plaintiff"), by and through undersigned counsel, and hereby files this Complaint showing the Court as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this lawsuit against ArcStream, Inc. ("ArcStream" or "Defendant") and Kevin Gault ("Gault" or "Defendant") (collectively "Defendants") to recover overtime pay, liquidated damages, prejudgment interest, costs, and attorney's fees under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.

2. Defendants willfully violated the FLSA by failing to pay Plaintiff for all overtime hours worked at a rate of time and one-half the required regular rate -- inclusive of all compensation not excludable from the regular rate calculation under applicable law -- for all hours worked above 40 in a workweek, and failing to pay Plaintiff all overtime compensation owed on a timely basis.

### PARTIES

3. Plaintiff is an adult individual and a resident of Georgia who resides in this judicial district and who worked for Defendants under the job title of Cable Technician ("Technician") beginning in or about December, 2014 and continuing through approximately May, 2016.

4. As a Cable Technician for Defendants, Plaintiff's job duties involved installing digital cable, high speed internet, and digital phone services.

5. As reflected in the corporate filings contained on the Georgia Secretary of State's website, Defendant ArcStream is a foreign for-profit corporation and may be served with process through its registered agent, Capitol Corporate Services, Inc., at 3675 Crestwood Parkway, N.W. Suite 350, Duluth, Georgia 30096. As also reflected on the Georgia Secretary of State's website, Defendant ArcStream's principal place of business in the State of Georgia is located at 4305 Interstate Drive, Suite A, Macon, GA 31210, located within this judicial district.

6. Upon information and belief, Defendant Gault is a Florida resident. As reflected in the corporate filings contained on the Florida Secretary of State's website, Defendant Gault is a corporate officer of Defendant ArcStream and therefore may be served with process at ArcStream's principal place of business located at 2235 Mercator Drive, Orlando, FL 32807 or at his physical address as listed on the Florida Secretary of State's website located at 3672 Farm Bell Place, Lake Mary, FL 32476.

## JURISDICTION AND VENUE

7. Pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has original jurisdiction over the claims set forth in this Complaint which arise under the FLSA.

8. Plaintiff was employed by Defendants in this judicial district, Defendants do business in this judicial district, and venue is therefore proper in this Court.

9. Defendant Gault as President and/or Director of Defendant ArcStream conducts significant business on behalf of Defendant ArcStream in this judicial district. Defendant Gault is therefore subject to the personal jurisdiction of this Court pursuant to Georgia's long arm statute, O.C.G.A. § 9-10-91.

10. At all times during the relevant period, Plaintiff was an "employee" of Defendants as defined by the FLSA.

11. At all times during the relevant period, Plaintiff was entitled to the protections of the FLSA pursuant to 29 U.S.C. §§ 203(e) & 207(a).

12. Defendant ArcStream was at all times during the relevant period a provider of installation of digital cable, high speed internet and digital phone services (hereinafter "Cable Installation") for the cable company Cox Communications and was at all times during the relevant period and thereafter an employer or enterprise engaged in commerce and therefore subject to the FLSA under 29 U.S.C. § 203(b) & (d).

13. Defendant ArcStream was, at all times during the relevant period in this Complaint and thereafter, an enterprise engaged in commerce or in the production of goods for commerce for purposes of the FLSA, having employees engaged in commerce or in the production of goods for commerce, and/or having employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and has (and had during the relevant period) annual gross revenues in excess of $500,000.

14. At all times during the relevant period in the Complaint and thereafter, Defendant Gault was responsible for classification of Plaintiff as an independent contractor, rather than as a W-2 employee, and for payment to Plaintiff for hours worked, and was a corporate officer with

operational control of ArcStream's covered enterprise, and may therefore be held liable in an individual capacity as an "employer" for the failure to pay overtime compensation to Plaintiff in violation of § 207 of the FLSA.

15. Plaintiff was at all times during the relevant period individually engaged in commerce on a regular and recurring basis during his employment with Defendants, and Plaintiff engaged in interstate work for Defendants by, for example without limitation, installing cable, phone, or high-speed internet equipment that has traveled through interstate commerce.

16. Jurisdiction and venue are proper in this action.

**FACTS RELATED TO ALL COUNTS**

17. At all times during the relevant period, Defendants internally classified Plaintiff, (and its other Technicians) as an "independent contractor," rather than as an employee paid W-2 wages.

18. Plaintiff did not sign or enter into an independent contractor agreement with Defendant ArcStream and/or Defendant Gault.

19. At all times while employed by Defendants, Plaintiff worked for ArcStream on a full-time and continuing basis.

20. At all times during the relevant period, Defendants hired and paid Plaintiff, and directed him on how to perform his job duties.

21. At all times during the relevant period, Defendants were responsible for signing and issuing pay checks to Plaintiff.

22. At all times during the relevant period, ArcStream sent work orders for each day's assignments to Plaintiff by having him access a website before his shifts were to begin.

23. At all times during the relevant period, ArcStream dictated when Plaintiff was to begin his shifts and under which circumstances his shifts were to end. By way of non-exhaustive example, ArcStream required Plaintiff to report to its warehouse no later than 7:30 am, and it required him to work until all of the day's installations were completed.

24. At all times during the relevant period, Plaintiff worked approximately 12 hours each day he performed work for Defendants, typically reporting to the workshop/warehouse at 6:30 am and ending his shift at approximately 6:30 pm.

25. At all times during the relevant period, ArcStream required Plaintiff to report to its warehouse to retrieve equipment he was to use for that day's installations, and to receive any work additional orders that were listed on the website.

26. At all times during the relevant period, Plaintiff received work orders from ArcStream that instructed him as to what businesses and/or residences he would be working at that day and what services he would be providing at these businesses and/or residences.

27. At all times during the relevant period, ArcStream's work orders informed Plaintiff as to the time period in which the jobs described in the work order must be performed.

28. At all times during the relevant period, Plaintiff did not sell or advertise his services to the general public.

29. At all times during the relevant period, ArcStream did not permit Plaintiff to perform installation services for a company other than ArcStream.

30. At all times during the relevant period, Plaintiff only installed equipment provided to him by ArcStream.

31. At all times during the relevant period, ArcStream required Plaintiff to purchase and wear, when performing installations, a shirt on which ArcStream's company logo is printed and place a sticker with ArcStream's logo on the vehicle he drove to perform work.

32. At all times during the relevant period, Plaintiff was subject to the direction and control of ArcStream with regard to the manner and means of his job performance.

33. At all times during the relevant period, ArcStream employed an individual in a quality control position to check the quality of Plaintiff's and its other Technicians' work. Plaintiff and the other Technicians were subject to discipline, such as non-assignment of work and/or suspension, if the quality control individual determined they, for example, performed an installation incorrectly.

34. At all times during the relevant period, ArcStream did not require Plaintiff to possess specialized knowledge before beginning his employment with ArcStream as a Technician.

35. Upon information and belief, ArcStream can terminate, and has terminated, Technicians when ArcStream is not pleased with the manner in which their services are performed.

36. Upon information and belief, when Cox has a concern about the performance of one of ArcStream's Technicians, Cox will communicate this to ArcStream, and ArcStream may terminate the Technician on its own accord and/or at the behest of Cox.

37. ArcStream required Plaintiff to participate in mandatory training for which he received no compensation. By way of non-exhaustive example, after Plaintiff began working for Defendants, he was required to ride along with his supervisor for approximately two days before

he could perform installations on his own. Plaintiff was not compensated for these two days of work.

38. At all times during the relevant periods, Defendants suffered or permitted Plaintiff to work in excess of 40 hours in one or more workweeks during the relevant periods but did not pay Plaintiff overtime compensation at time and a half his applicable regular rate as defined by the FLSA for all hours worked over 40 in a workweek as required by the FLSA.

39. Upon information and belief, Plaintiff was paid on a piece-rate or per job basis, which paid a set amount for performing specific tasks and services based on a point system.

40. Plaintiff was not paid for all the of the piece-rate or per job tasks he was required to perform. By way of non-exhaustive example, Plaintiff was not paid a piece-rate for installation and/or set-up of some of Cox's equipment and/or services that Plaintiff's supervisor referred to as "favors." Plaintiff performed installations as "favors" approximately 1-2 times per week and was not compensated using Defendants' point system for these "favors."

41. As a result of the failure to compensate Plaintiff for installation of the services referred to as "favors," Plaintiff's weekly pay was reduced.

42. ArcStream's payroll system of piece-rate or per job pay did not properly pay Plaintiff overtime wages for all hours worked in excess of 40 in a workweek.

43. Any alleged error by Plaintiff while performing an installation would result in a "back charge" of up to the full amount earned for an installation job.

44. These back charges occurred even where no error was committed by Plaintiff and/or an alleged error had no effect on the services received by a customer. By way of non-exhaustive example, Plaintiff was charged a back charge of approximately $60 where a customer thought there was an issue with the television service, but when a Technician went out to check

on this issue, it was discovered that the television was merely unplugged. Despite no error being committed by Plaintiff, Plaintiff was still back-charged $60, reducing his weekly pay.

45. As a result of these back charges, Plaintiff was deprived of his regular compensation for a job he performed and an installation for which ArcStream was paid by Cox.

46. ArcStream maintained a policy and practice of making deductions from a Plaintiff's and the other Technicians' compensation for the use of company trucks and for accessing the website Plaintiff and the other Technicians were required to use to retrieve each day's work orders. By way of non-exhaustive example, Defendants deducted $15 per week from Plaintiff's pay for the use of the website he was instructed to access to retrieve his daily work orders.

47. As a result of these deductions, Plaintiff's weekly pay was reduced, which further reduces Plaintiff's regular rate, sometimes below minimum wage. By way of non-exhaustive example, for the workweek beginning April 18, 2015, after deductions for back charges and access to the work order website, Plaintiff was paid only $2.08 for the entire workweek, despite earning over 90 points for that workweek according to Defendants' point system for payment.

48. As a result of these deductions, Plaintiff did not receive wages free and clear.

49. Plaintiff was required under the FLSA to be compensated at a rate of one and one-half times his regular rate of pay for each hour worked in excess of 40 in a workweek, but did not receive the required overtime pay.

50. By way of non-exhaustive example, for the workweek September 19, 2015 through approximately September 25, 2015, Plaintiff worked approximately 70 hours and did not receive overtime wages for the approximately 30 hours worked in excess of 40 hours during that workweek.

51. Defendants knew or should have known that Plaintiff was covered by the maximum hour and overtime payment requirements of the FLSA.

52. Defendants' failure to pay Plaintiff the overtime compensation required by the FLSA was willful.

53. Upon information and belief, Defendants have failed to keep all records required by 29 U.S.C. § 211(c) regarding the wages, hours, and other conditions of employment of Plaintiff for the time period required by law.

## COUNT ONE

## FAIR LABOR STANDARDS ACT—OVERTIME

54. All previous paragraphs are incorporated as though fully set forth herein.

55. Plaintiff is an employee entitled to the overtime compensation required by the FLSA throughout his work for Defendants during the relevant period.

56. On numerous occasions during the relevant period, Defendants suffered or permitted Plaintiff to work more than 40 hours in a workweek without receiving overtime compensation at time-and-a-half his properly calculated regular rate for hours worked over 40 under the FLSA -- i.e., his regular rate inclusive of his base rate for non-overtime hours and all other compensation not otherwise excludable under 29 U.S.C. § 207(e) ("regular rate").

57. As a result of Defendants' failure to compensate Plaintiff at a rate not less than one and one-half times the required regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants violated the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

58. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

59. Due to Defendants' FLSA violations, Plaintiff is entitled to a judgment awarding recovery of his back overtime pay at the rate of one and a half times his applicable regular rate, in addition to an equivalent amount as liquidated damages, prejudgment interest, attorney's fees, and costs pursuant to 28 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants and in favor of Plaintiff, finding a violation of the FLSA and awarding the following relief:

1. Order Defendants to pay Plaintiff his unpaid back overtime pay at time-and-a-half his applicable rate for all hours worked over 40 in a workweek during the relevant period, and an equivalent amount as liquidated damages (or prejudgment interest if liquidated damages are not awarded in full);

2. Order Defendants to pay Plaintiff his costs and attorney's fees; and

3. Grant such further relief as the Court finds just and proper in this action.

PLAINTIFF DEMANDS A TRIAL BY A JURY OF TWELVE PERSONS.

Respectfully submitted this 20th day of April, 2017.

**Keegan Law Firm, LLC**

*/s/Jerilyn E. Gardner*
Marcus G. Keegan
Georgia Bar No. 410424
Jerilyn E. Gardner
Georgia Bar No. 139779
2987 Clairmont Road NE, Suite 225
Atlanta, Georgia 30329
(404) 842-0333 (Phone)
(404) 920-8540 (fax)
mkeegan@keeganfirm.com;
jgardner@keeganfirm.com
**Counsel for Plaintiff**